It is a well-established principle that, where the alleged incompetency results from the use of intoxicants rather than from any mental infirmity, it is necessary, in order to warrant a refusal of probate to a will, to establish that, at the time of the making of such will, the testator was so much under the influence of the intoxicant as to be unable to bring to its execution the calm judgment which the law requires. This fact has not only not been shown, but, on the contrary, the will has been shown to have been drafted and executed under the direction of an attorney of this court who has for many years borne an excellent reputation. He explains in minute detail the character of the testator and the nature of the instructions given, in all of which he is corroborated by other witnesses, and his evidence appeals to me as entirely truthful and natural. Under these circumstances, therefore, the will should be admitted to probate.

Probate decreed.

---

(55 Misc. Rep. 175.)

### In re HIGGINS' ESTATE.

(Surrogate's Court, Cattaraugus County.   June, 1907.)

1. TAXATION—TRANSFER TAX—EXEMPTIONS—BEQUEST TO HOSPITAL.

Under Laws 1905, c. 368, p. 829, § 221, providing that property devised to any charitable, benevolent, hospital, or infirmary corporation, etc., shall be exempt from the provisions of the act, and also property bequeathed to a corporation organized as a library, a bequest to a corporation organized to carry on a general city hospital is exempt from taxation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, §§ 1693, 1694.]

2. SAME—BEQUEST TO LIBRARY.

Under Laws 1905, c. 368, p. 829, § 221, a bequest to a corporation organized to conduct a public library is exempt from a transfer tax.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 1695.]

3. SAME—CHILDRENS' HOME.

A bequest to a corporation organized to maintain a home for friendless children and to take charge of such under the age of 16 as may be intrusted to it by their parents or guardians or committed by competent authority, which was incorporated under the act of 1848 for the incorporation of charitable societies, maintained by contributions, and which affords facilities for moral instruction and securing permanent homes, is exempt from the transfer tax under Laws 1905, c. 368, p. 829, § 221.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, §§ 1693, 1694.]

In the matter of the estate of Frank Wayland Higgins. Proceedings under the taxable transfer act. Decree rendered.

Allen J. Hastings, for executors.

M. V. Benson, for Western New York Society for the Protection of Homeless and Dependent Children.

George M. Lundy, for Comptroller.

DAVIE, S.   Frank Wayland Higgins died at the city of Olean, N. Y., February 12, 1907, leaving a will which was duly admitted to pro-

bate by the Surrogate's Court February 18, 1907. By the terms of his will he bequeathed to the Western New York Society for the Protection of Homeless and Dependent Children the sum of $5,000, to the Olean General Hospital the sum of $10,000, and to the Forman Library of Olean books, to be selected and purchased by his wife, sister, and sister's husband, to the extent and value of $2,000. The executors made due application for an assessment of the estate of which the said decedent died possessed, liable to taxation under the provisions of the taxable transfer act (Heydecker's Gen. Laws, p. 1930, c. 24, art. 10), and for a decree fixing such tax. The evidence presented upon such proceeding shows the total value of such estate, real and personal, to be the sum of $839,279.93, exclusive of real estate owned by the decedent outside the state of New York; the deductions to be made for debts, funeral expenses, and costs of administration to be the sum of $38,-325.59; leaving net value of the estate, $800,954.34. The controversy relates to the liability of the institutions above named to tax under the provisions of the taxable transfer act; the aggregate of the bequests to them being $17,000, and each liable at the rate of 5 per cent., if at all.

The General Hospital of Olean is a corporation duly organized for the purpose of carrying on and maintaining a general city hospital. The Forman Library is incorporated for the purpose of maintaining and conducting a public library. Both of these institutions, from the nature of their organization and the method of conducting their business, come directly within the scope of the exempting provisions of the taxable transfer act.

The Western New York Home for the Protection of Homeless and Dependent Children was incorporated January, 1, 1878, pursuant to the provisions of the act of the Legislature passed April 12, 1848 (Laws 1848, c. 319), entitled "An act for the incorporation of benevolent, charitable, scientific and missionary societies," and the acts amendatory thereto. Its certificate of incorporation provides:

"The particular business and objects of this society or association are to establish and maintain at Randolph, in the county of Cattaraugus and state of New York, a home for friendless and destitute or unprotected children, and to receive and take charge of such children under the age of sixteen years as may be voluntarily entrusted to them, by their parents or guardians, or committed to their charge by competent authority, and to provide for their support, and afford them the means of moral, intellectual and industrial education."

The work of this institution is charitable in its nature, being largely maintained by gifts and contributions; none of its officers receiving any compensation for their services. It receives and cares for homeless and dependent children, giving them educational advantages along industrial and literary lines, affords them excellent facilities for moral instruction, and eventually secures proper and permanent homes for them. Consequently this corporation may very properly be denominated a charitable, educational, and religious one.

Under the provisions of the taxable transfer act, as they existed prior to the 11th day of April, 1900, all the institutions above specified were specifically exempt from taxation. On the date last above named the provisions of chapter 382, p. 917, of the Laws of 1900, took effect.

Such act was entitled "An act to amend the tax law relating to taxable transfers of property," and provides as follows:

"Sec. 2. Article ten of such chapter is hereby amended by adding a section to be section two hundred and forty-three to read as follows:

"Sec. 243. Exemptions in Article One Not Applicable.—The exemptions enumerated in section four of the general tax law, of which this article is a part, shall not be construed as being applicable in any manner to the provisions of article ten hereof."

The law relating to taxable transfer of property, as it then existed, was contained in article 10 of the general tax law (Laws 1896, p. 868, c. 908, as amended by Laws 1897, p. 150, c. 284). The Court of Appeals, in construing the amendment of April 11, 1900, held that it was manifestly the intention of the Legislature, by enacting the new section above quoted, to make the exemptions of section 4 of the general tax law no longer applicable to the exemptions under the taxable transfer act, and no longer the rule by which such exemptions should exist or be determined. Matter of Huntington, 168 N. Y. 399, 61 N. E. 643. The conclusion in the case cited was evidently somewhat reluctantly reached; Parker, J., vigorously dissenting, and Landon, J., in the prevailing opinion, saying:

"The organized charities and benevolent agencies which actually relieve human misery, and labor in unselfish devotion to improve the moral and physical condition of mankind, are alike the fruits and aids of good government, and to exempt their property—usually the gifts of the benevolent—from the burdens of taxation is scarcely less the duty than the privilege of the enlightened legislator. Clearly this exemption should be placed upon broad, equitable grounds, quite above the injurious imputations sometimes resulting from individual or special exemptions."

Nevertheless, it became the law applicable to the provisions of the taxable transfer act, and would have so remained had no subsequent legislation ensued. But chapter 368, p. 829, of the Laws of 1905 took effect June 1, 1905, and, while it is entitled "An act to amend the tax law, in relation to taxable transfers," yet it is, in and of itself, a full and complete transfer tax law, defining with great particularity taxable transfers, establishing the exceptions from and limitations to its operation and the method of assessing estates and determining and collecting the tax thereon. Section 221 of this act provides:

"But any property devised or bequeathed to any person who is a bishop, or to any religious, educational, charitable, missionary, benevolent, hospital or infirmary corporation including corporations organized exclusively for Bible or tract purposes shall be exempted from and not subject to the provisions of this act. There shall also be exempted from and not subject to the provisions of this act personal property other than money or securities bequeathed to a corporation or association organized exclusively for the moral or mental improvement of men or women or for scientific, literary, library, patriotic, cemetery or historical purposes," etc.

The enactment of this statute in 1905, the same being in force at the time of the death of the decedent in this case, restores the exemptions which the amendment of April 11, 1900, took away under the construction placed thereon in Re Huntington, above cited. The institutions claiming exemptions in this proceeding are distinctly within the purview of the exempting portions of the statute quoted. The total

tax to which this estate is liable, allowing such exemptions, is the sum
of $8,481.35; and a decree to that effect will be entered.

Decreed accordingly.