(87 Misc. Rep. 255)

### In re ALTMAN'S ESTATE.

(Surrogate's Court, New York County.   October 30, 1914.)

1. Wills (§ 184*)—Construction—Codicil—Effect.

Testator by his will directed the formation of a corporation to take his stock in a mercantile corporation and apply the income for the benefit of the mercantile corporation, or its employés, or some of them, as the directors or trustees should approve, etc., declaring that in case the corporation formed, in the judgment of the executors, should prove insufficient or unsuited to the purposes expressed, the executors might select some other form of corporation, or make necessary changes in the existing corporation prior to the transfer or delivery of the stock, etc.  During the testator's lifetime a corporation was chartered to carry out the terms of the will, after which a codicil was executed by which the testator gave to such corporation the stock in question, to be held and owned "for the purposes set out in said special act of the Legislature of the state of New York * * * and upon the terms therein provided."  *Held,* that the powers granted to the executors by the will to change the corporation were superseded by the codicil, and that the purposes to which the bequest was to be applied, as enumerated in the particular article of the ·will, were controlling only to the extent that they were not in conflict with those mentioned in the codicil.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 462–467;  Dec. Dig. § 184.*]

2. Charities (§ 39*)—Charitable Trusts—Administration—Corporation —Purposes.

Where a testator provided for the formation of a corporation to take and administer certain property in accordance with specified benevolences, the purposes and objects of the corporation should be ascertained from the act of incorporation, and not from the will or codicil.

[Ed. Note.—For other cases, see Charities, Cent. Dig. § 100;  Dec. Dig. § 39.*]

3. Charities (§ 48*)—Corporations—Purposes—Change.

Where a testator by a codicil bequeathed certain securities to a corporation then in existence and formed to carry out certain benevolences of the testator, the corporation's right to take the bequest became vested on the decedent's death, and no modification of the powers enumerated in its charter could thereafter be made by·the executors under authority alleged to have been conferred by the will, so as to alter the status of the corporation in so far as the state was concerned.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 78, 81, 104, 106;  Dec. Dig. § 48.*]

4. Taxation (§ 876½*)—Transfer Tax—Corporate Exemption.

The burden is on a corporation claiming exemption from transfer taxes to demonstrate its right thereto by competent proof that it is one of the corporations mentioned in Transfer Tax Law (Consol. Laws, c. 60) § 221, as absolutely exempt from the provisions of the act.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 876½.*]

5. Taxation (§ 876*)—Transfer Taxes—Exemptions—"Charity"—"Charitable Use"—"Charitable Corporation."

Since the term "charity" always connotes the public generally, or the public at large, or at least an indefinite section of it, as distinguished from a definite section thereof, and a "charitable use" is one that exists for persons uncertain, as the public at large, or some general section of it, such as the poor or the needy, a corporation chartered to administer certain property to promote the social, physical, and economic welfare and efficiency of a business corporation, and to the use and benefit of charitable, benevolent, and educational institutions in New York, was not a

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"charitable corporation," within Transfer Tax Law, § 221, exempting property bequeathed to charitable corporations from the applicability of the transfer tax.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1693–1699; Dec. Dig. § 876.*

For other definitions, see Words and Phrases, Second Series, Charitable Corporations; First and Second Series, Charity; Charitable Use.]

6. TAXATION (§ 876*) — TRANSFER TAXES — EXEMPTIONS — "BENEVOLENCE" — "BENEVOLENT USE"—"BENEVOLENT CORPORATIONS."

Since benevolence is not synonymous with charity, and a "benevolent use" is not a charitable use, the term "benevolent" meaning "loving others and actively desirous of their well being," "giving for love, as benevolent schemes, institutions," etc., a bequest to a corporation to be used in the improvement of the social, physical, and economic condition of the employés of a business corporation, the trustees being incorporated and empowered to administer the fund for that purpose, was a "benevolence," and the corporation a "benevolent corporation," within Transfer Tax Law, § 221, exempting from transfer taxation any property bequeathed to a benevolent corporation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1693–1699; Dec. Dig. § 876.*

For other definitions, see Words and Phrases, First and Second Series, Benevolent; Benevolent Association.]

7. TAXATION (§ 895*)—TRANSFER TAX—SHARES OF STOCK—VALUE.

Testator bequeathed corporate stock to certain employés of a corporation, but provided that, when they ceased to be connected with the business of the corporation, it should have the right to purchase the stock at $125 per share. Held, that the appraisal of the stock at that price for transfer taxation was erroneous, since, if the market value was in excess of such amount, the state was entitled to a tax on the full market value, the value of the legatee's life estate in the excess being added to the $125 to ascertain the value of the bequest to him, the remainder being taxed to the corporation, and if the market value was less than $125 then the bequest to the beneficiary for life should be taxed only at the actual value of the stock.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. § 895.*]

Judicial settlement of the estate of Benjamin Altman, deceased. From an order assessing a transfer tax against decedent's estate, the State Comptroller appeals. Modified and affirmed.

Cadwalader, Wickersham & Taft, of New York City (Francis Smyth and George W. Wickersham, both of New York City, of counsel), for the executors.

George E. Weller, of New York City (William L. Stout, of New York City, of counsel), for State Comptroller.

FOWLER, S. The state comptroller appeals from the order assessing a tax upon the estate of decedent, and contends that the appraiser erred in exempting from taxation the shares of stock bequeathed by the decedent to the "Altman Foundation." The appeal also brings up for consideration the finding of the appraiser that the market value of the shares of stock of B. Altman & Co. bequeathed to certain employés of the company is $125 a share. The decedent had his domicile in this state. He died on the 7th of October, 1913, and his will was probated

in this county. He bequeathed to the "Altman Foundation" all the shares of stock of the corporation known as the "B. Altman & Co." owned by him on the date of his death. The appraiser found that the number of shares bequeathed was 19,986.

The "Altman Foundation" was created on the 1st of April, 1913, by a special act of the Legislature of the state of New York. Laws 1913, c. 149. Section 1 of the act creating the corporation provides that certain persons therein named are constituted—

"a body corporate by the name of Altman Foundation, for the purpose of receiving and maintaining a fund or funds, administering the same, and applying the principal and income thereof, and either of them, to promote the social, physical or economic welfare and efficiency of the employés of B. Altman & Company, a New York corporation, and to the use and benefit of charitable, benevolent or educational institutions within the state of New York, by such agencies and means as from time to time shall be found appropriate therefor."

Section 3 provides that:

"The corporation hereby formed is not established and shall not be maintained or conducted for pecuniary profit, or for the pecuniary profit of its members, and no member of the corporation shall be entitled to or shall receive any such profit; provided, however, that reasonable compensation may be paid to an officer or member for services actually rendered the corporation."

A codicil to decedent's will was executed subsequently to the enactment of the law creating the Altman Foundation, and that part of paragraph 3 which is material to the matter under consideration reads as follows:

"I do give and bequeath to Altman Foundation, a corporation duly incorporated, all the capital stock of B. Altman & Company, a corporation, which I may own at the time of my death not herein or otherwise disposed of by my said will or by some codicil to be hereafter made; which said stock shall be held and owned by the said corporation, Altman Foundation, for the purposes set out in the said special act of the Legislature of the state of New York, hereinbefore referred to, and upon the terms therein provided. I do further provide that the provisions of article 13 of my said will, in so far as the same may be appropriate thereto, and within the powers of the said corporation shall be applicable thereto and be an expression of my wishes as to the manner in which said corporation shall be conducted."

In article 13 of his will the decedent directs that the corporation formed for the purpose of taking the bequest of the shares of stock of B. Altman & Company held by him at the time of his death shall apply the income thereof in whole or in part—

"for the benefit either of B. Altman & Company or of its employés or some of them in such manner as the directors or trustees shall approve; to distribute said shares or such portion thereof as the directors shall approve from time to time among those employés whose services may be deemed to entitle them to such recognition; to improve the condition of the employés of B. Altman & Company; to further the adoption by said corporation of a system of profit-sharing by its employés, entitling such employés to considerable interests in the said corporation, and to contribute thereto if necessary."

That article of his will also provides that in case the corporation formed prior to his death—

"shall in the judgment of my executors prove insufficient or unsuited to the purposes herein expressed, I authorize my executors to select some

other form of corporation, or to make the necessary changes in such existing corporation prior to the transfer or delivery of the stock standing in my name at the time of my death, so that no question shall exist as to the capacity and entire fitness of the corporation so to carry out the purposes and objects herein expressed."

[1] I am inclined to think that the extensive powers granted to the executors by article 13 of the will are limited by the words of the codicil, and that the various purposes to which the principal or income of the bequest may be applied as enumerated in that article are controlling only to the extent to which they do not conflict with those mentioned in the codicil.

[2] The purposes and objects of the Altman Foundation must be ascertained from the act of incorporation, and not from the will or codicil. Therefore the words of article 13 of the will specifying the uses and purposes to which the bequest should be applied are controlled by the provision of the act of incorporation, and the character of the corporation must be determined from the act creating it, without reference to the provisions of article 13 of the will. I am also inclined to think that the testator intended by paragraph 3 of the codicil to revoke so much of article 13 of the will as was inconsistent with the provisions of the codicil or the act of incorporation, and therefore that the executors, after the execution of the codicil, lost the right given them by article 13 of the will to change the form of the corporation.

[3] The bequest in the codicil is to the Altman Foundation, a corporation in existence at the date of the execution of the codicil, and in existence at the date of decedent's death. The right of that particular corporation to take the bequest became vested and absolute upon the death of the decedent, and no modification of the powers enumerated in its charter could thereafter be made by the executors so as to alter the status of the corporation in so far as the state was concerned.

[4] A corporation claiming to be exempt from taxation under the Transfer Tax Law (Consol. Laws, c. 60, §§ 220–245) must demonstrate its right to such exemption by competent proof that it is one of the corporations mentioned in section 221 of the Tax Law as being absolutely exempt from the provisions of the act. That section reads as follows:

"Any property devised or bequeathed * * * to any religious, educational, charitable, missionary, benevolent, hospital or infirmary corporation * * * shall be exempted from and not subject to the provisions of this article. * * * But no such corporation or association shall be entitled to such exemption if any officer, member or employé thereof shall receive or may be lawfully entitled to receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes or as proper beneficiaries of its strictly charitable purposes."

If the Altman Foundation belongs to this classification, the transfer of the property given to it by the decedent is exempt from taxation. If, however, it does not fall within the classification specified in the section, it is subject to taxation under the provisions of the Transfer Tax Law.

[5] The executors contend that the Altman Foundation is a charitable or a benevolent corporation. We will first consider whether it

is charitable. I have been unable to find an adjudication of the appellate courts of this state which explicitly determines what powers conferred upon a corporation or what duties performed by it constitute it a charitable corporation within the meaning of those words in the Transfer Tax Law. In Matter of Higgins, 55 Misc. Rep. 175, 106 N. Y. Supp. 465, the court held that the "Western New York Home for the Protection of Homeless and Dependent Children" was a charitable corporation and therefore exempt from taxation under the provisions of the Transfer Tax Law. In Matter of Allen, 76 Misc. Rep. 88, 136 N. Y. Supp. 327, the "Trustees of the Masonic Hall and Asylum Fund," the objects of which were to build schools for the free education of children of Masons and for the relief and support of wives and orphans of Masons, was held to be a charitable corporation and that a bequest to it was exempt from taxation. These adjudications are not explicitly or implicitly conclusive upon the facts in this case.

There is no doubt a solid difference in the common law between a corporation which is chartered as a public almoner and one which is in reality chartered as a trustee for unknown persons who may be in a definite house, or in a specified circumscribed area, at a future time. Charity always connotes the public generally or the public at large, or at least an indefinite section of it (Sherwood v. American Bible Society, *40 N. Y. at page 566), and not, I think, a definite section of it; or, in other words, not certain beneficiaries in a particular employment, who are only uncertain because their names do not happen to be known to a charitable donor. "Id certum est quod certum reddi potest." The test of a charitable gift or use and the test of a charitable corporation are in law the same. A charitable use must be or exist for personæ incertæ; or, in other words, it must be for persons as uncertain as the public at large, or some general section of it, such as the poor or the needy. The instant particularity conflicts with generality a question arises at common law as to whether a use is really charitable or private. I will not stop to review at length the learning on this head, as it is familiar or accessible to all of us. I am of the opinion that under the common law of charities the Altman Foundation is not a charitable corporation, and that the common law on this head controls the meaning of section 221 of the Transfer Tax Law.

[6] But section 221, Transfer Tax Law, excepts from the operation of the tax laid by the act not only charitable corporations, but also "benevolent" corporations. In what way benevolent corporations came to be thus contrasted by the Legislature with charitable corporations it is not possible for me to inquire. That these two kinds of corporations are so contrasted is plain on the face of the statute before us. The Legislature is presumed to know the law, and in its enumeration of corporations to know that a benevolent corporation is a different corporation from a charitable corporation by the common law of charities. Thomson's Ex'rs v. Norris, 20 N. J. Eq. 490. We find in chapter 701, Laws of 1893 (now section 113, Real Prop. Law [Consol. Laws, c. 50]; section 12 Pers. Prop. Law [Consol. Laws, c. 41]), that benevolent uses are directly contrasted with charitable uses, and it is a necessary inference from the general course of our

recent legislation, at least in so far as the construction of a taxing law is concerned, that the Legislature intended by the Transfer Tax Law to except out of its operation not only corporations engaged in the work of charity, but also those engaged in the work of benevolence. Is there any public harm in this course? Benevolence is as laudable as charity. In the construction of a taxing act the person taxable must clearly fall within the purview of the act, or he goes free of the tax in courts of justice. In other words, the incidence of a tax must be clear in order to be enforced by construction in the courts of this state.

In the application of canons of construction to the section before me I must assume, then, that the Legislature knew that a corporation chartered to carry on works of benevolence was a different corporation from one chartered to carry on works of charity. The exception of benevolent corporations as well as charitable corporations in the Tax Law compels us to determine what species of corporations is intended by "benevolent corporation." It is to be remembered at this point that at common law benevolent uses were not sustained, because they were not charitable, while charitable uses were always sustained. People v. Powers, 147 N. Y. at page 110, 41 N. E. 432, 35 L. R. A. 502. A benevolent use is not by our common law a charitable use. Chamberlain v. Stearns, 111 Mass. 267; Thomson's Ex'rs v. Norris, 20 N. J. Eq. 489; Matter of Cunningham, 76 Misc. Rep. 120, 136 N. Y. Supp. 922. In the Case of Mr. Cunningham's Will I stated, pursuant to authority, that a benevolent use indicated a larger use or scope than a charitable use. 76 Misc. Rep. at page 127, 136 N. Y. Supp. 922. My judgment seems to have met the approval of the higher courts when it came on for review. 151 App. Div. 940, 135 N. Y. Supp. 1107; 206 N. Y. 601, 100 N. E. 437.

To recapitulate, there is by the common law a recognized legal distinction between charitable uses and benevolent uses. It follows that a corporation which is a trustee of charitable uses is engaged in a different vocation from a corporation which is a trustee of benevolent uses. I take leave to think that our Court of Appeals has recognized in substance the manifest distinction in our remodeled law of charities between a charitable corporation and a benevolent corporation. Matter of Shattuck, 193 N. Y. at page 454, 86 N. E. 455. We must remember that common-law terms when used in a statute of this state are still controlled by the common law unless statute otherwise provides. Perkins v. Smith, 116 N. Y. 441, 23 N. E. 21; Michaels v. Fishel, 169 N. Y. 381, 62 N. E. 425; Waters Co. v. Gerard, 189 N. Y. 302, 309, 82 N. E. 143, 24 L. R. A. (N. S.) 958, 121 Am. St. Rep. 886, 12 Ann. Cas. 397. Now the terms "benevolent" and "charitable" have in numerous adjudications in common-law books of authority been held to denote different schemes of endeavor. I have not been able to find any reported decision in the courts of this state which construes the term "benevolent corporation" as employed in the Transfer Tax Law. The books of the law are, however, full of adjudications contrasting benevolence and charity. I had occasion to

refer to some of them in the Case on Mr. Cunningham's Will, 76 · Misc. Rep. at page 130, 136 N. Y. Supp. 922; James v. Allen, 3 Mer. 17.

The real question then here resolves itself into this: Is the Altman Foundation a benevolent corporation, and consequently within the exception stated in the Transfer Tax Law? I think from authority it is such. Not only does the common law define "benevolent," but the word "benevolent" is defined in the Standard Dictionary as "loving others and actively desirous of their well being;" "giving for love, as benevolent schemes, institutions," etc. This popular definition would seem also to justify the characterization of the Altman Foundation as a benevolent corporation. The Altman Foundation was certainly created for the purpose of helping others; no pecuniary benefit can accrue to it from the exercise of its powers. It falls in no other class of corporations than benevolent corporations. It was certainly formed to afford the late Mr. Altman an opportunity of exhibiting in some practical way his love of humanity and his desire to promote human happiness. The improvement of the social, physical, and economic condition of the employés of B. Altman & Co. might reasonably be expected to result in increasing the happiness of the individual employés; and as a voluntary, unselfish act which affords happiness to an individual is properly described as benevolent, the functions of the Altman Foundation as enumerated in its charter are necessarily benevolent in their nature. B. Altman & Co. employ about 3,500 persons, and the application to their needs, or to the promotion of their happiness, of the property bequeathed by the decedent to the Altman Foundation, is an act of practical benevolence. I am therefore inclined, until advised to the contrary, to think that the Altman Foundation is a "benevolent corporation," within the signification of that word in section 221 of the Transfer Tax Law, and that the bequest to it is exempt from taxation.

It may be that draftsmen of the late statutes, when they made new collocations and classifications of corporations, accomplish other results than those they intended. For such a misadventure the courts are not responsible, if the statute is clear. The inquiry is not what the draftsmen meant, but what the Legislature must be taken to mean. If benevolent corporations had been intended by the Legislature to be eædem personæ as charitable corporations, the term "benevolent corporations" would not, I think, have been inserted in an enumeration of the corporations excepted from the operation of the Transfer Tax Law. It seems to me to follow, from the decisions and principles I have mentioned, that the Altman Foundation is a benevolent corporation within the meaning of the exception in section 221 of the Transfer Tax Law.

[7] We come now to another point. The decedent bequeathed to certain employés of B. Altman & Co. a number of shares of stock of that company, but provided that when they ceased to be connected with the business of B. Altman & Co., through death or otherwise, that corporation would have the right to purchase the shares of stock

so bequeathed and to pay for them at the rate of $125 a share. No evidence was submitted to the appraiser as to the value of the stock of B. Altman & Co., and he appraised the value of the shares bequeathed to the employés at $125 each, that being the highest price at which they could be sold to the company under the terms of decedent's will. Subdivision 7 of section 220 of the Transfer Tax Law provides that the tax shall be imposed "upon the clear market value of such property." It is therefore the duty of the transfer tax appraiser to ascertain the clear market value of the property which he is designated to appraise, because the market value of the property is the basis upon which the tax is calculated. The employés to whom the shares of stock were bequeathed cannot sell them for more than $125 a share unless B. Altman & Co. refuse to exercise its option to take them at $125 a share. But B. Altman & Co. cannot be compelled to take the stock at $125 a share; it merely has an option to take them at that figure before they can be sold to any other person or corporation. If the company should refuse to exercise its option, and the market value of the stock is less than $125 a share, the employés should not be compelled to pay a tax upon that valuation. If, on the other hand, the stock has a market value very much in excess of $125 a share, the state of New York is entitled to a tax upon the full market value of the property transferred. The appraiser, therefore, should ascertain the clear market value of this stock, and, if it exceeds $125 a share, the value of the legatee's life estate in such excess should be added to $125, in order to ascertain the value of the bequest to him. The remainder, after such life estate in the excess, should be taxed against B. Altman & Co., as that corporation has the right to take this stock and pay only $125 a share for it. If the market value of the shares is less than $125, then the bequest to the employés should be taxed only at the actual value of the stock. The appeal is sustained upon this point.

The appeal from that part of the order which suspends taxation upon certain contingent interests is overruled. Matter of Zborowski, 84 Misc. Rep. 342, 145 N. Y. Supp. 1101, affirmed by Appellate Division June 19, 1914, 148 N. Y. Supp. 1151.

The appraiser's report will be remitted to him, for the purpose of ascertaining the value of the shares of stock of B. Altman & Co. bequeathed to the employés of that company. Settle order on notice.