In the Matter of the Transfer Tax upon the Estate of EMMA B. KENNEDY, Deceased.

STATE TAX COMMISSION, Appellant; STEPHEN BAKER and Another, Executors, etc., of EMMA B. KENNEDY, Deceased, and Another, Respondents.*

First Department, January 19, 1934.

* Affd., 264 N. Y. 691.

*Seth T. Cole*, for the appellant.

*John F. Brosnan* of counsel [*James E. Freehill* with him on the brief; *Rushmore, Bisbee & Stern*, attorneys for Stephen Baker and F. Leonard Kellogg, as executors, etc., of Emma B. Kennedy, deceased; *DeForest, Cullom & Elder*, attorneys for Alumnæ Association of the School of Nursing of the Presbyterian Hospital in the City of New York], for the respondents.

UNTERMYER, J.   The State Tax Commission appeals from an order of the surrogate denying its appeal from a *pro forma* order assessing the tax on transfers under the last will and testament of Emma B. Kennedy and exempting from taxation a bequest of $15,000 to the respondent "Alumnæ Association of the School of Nursing of the Presbyterian Hospital in the City of New York." The alumnæ association was incorporated in 1899 by chapter 71 of the Laws of 1899, and, as its name imports, consists of graduate nurses of the Presbyterian Hospital.   It had a membership, when first organized, of one hundred and nineteen.   Since that time its membership has been augmented by thirty to forty graduates annually until 1926, and by sixty to seventy graduates annually thereafter.   The initiation fee is five dollars.   The dues for active resident members are five dollars a year, and for non-resident and associate members three dollars.   The objects of the association, as stated in its articles of incorporation, are:

(1) To promote a common fellowship among graduate nurses;

(2) To advance in every way the interests of all graduate nurses;

(3) To provide a benefit or loan fund for its members when ill or otherwise in need, and to tender them pecuniary or other assistance;

(4) To secure a permanent home or club house for its members and to provide such other home or homes, or buildings as may be required to fully carry out the objects and purposes of said corporation.

Although the articles of incorporation provide that one of the objects of the association is to secure a permanent home or club house for its members, this has not been done.

The funds received for initiation fees and dues, together with other current revenues, are paid into the " general fund " of the association. Necessarily the amount of such receipts varies from year to year, but for the year 1930 these receipts were $5,458.92; for the year 1931 $5,516.23. Disbursements for current operating expenses were $4,860 in 1930 and $6,268 in 1931. These disbursements included the salary of a clerk, the expenses of delegates to conventions, the erection of a memorial to a deceased member, dues paid to district No. 13 of the New York State Nurses Association and, as the largest single item, amounting to $1,464 in 1930 and $1,704 in 1931, the cost of printing a quarterly magazine, which is distributed to the members for the purpose of promoting common fellowship and in furtherance of their general interest.

The association also maintains two special funds. The larger of these, amounting, approximately, to $250,000, is the pension fund, out of which pensions at the rate of $300 a year are paid to members, who, on account of adversity, happen to be in need of help. This fund represents accumulations of contributions made throughout many years and the proceeds of entertainments given by the association. The benefit fund, now amounting to about $86,000, has been accumulated from contributions made by friends of the association. Out of this fund, loans of one hundred dollars, at interest of three per cent, are made to needy members of the association and sick benefits for eight weeks at the rate of twenty dollars a week are paid to members who are temporarily ill. At the present time pensions average annually about twenty-one, sick benefits thirty, and loans to members ten. It should be observed, however, that the bequest of Mrs. Kennedy is to the alumnæ association and not to either of these special funds. Had the testatrix directed the bequest to be paid to either special fund a different question would be here. (*Matter of Willey*, 128 Cal. 1; *Mason* v. *Perry*, 22 R. I. 475; *Duke* v. *Fuller*, 9 N. H. 536.)

The question then is whether the bequest to the alumnæ association for its general corporate purposes is to a charitable or benevolent corporation so as to be exempted from taxation by the provisions of section 221 of the Tax Law. That section, so far as material, provides: " Any property devised or bequeathed  *  *  * to any religious, educational, library, charitable, missionary, benevolent, hospital or infirmary corporation, wherever incorporated, *  *  *  shall be exempted from and not subject to the provisions of this article. There shall also be exempted from and not subject to the provisions of this article personal property other than money or securities bequeathed to a corporation or association wherever incorporated or located, organized exclusively for the moral or

mental improvement of men or women or for scientific, literary, patriotic, cemetery or historical purposes or for two or more of such purposes and used exclusively for carrying out one or more of such purposes."

We need not concern ourselves with the second part of section 221, which is applicable to a bequest " other than money or securities." The bequest here, being of money, is only exempted if the alumnæ association is " charitable " or " benevolent." That a distinction exists between a charitable and a benevolent corporation is evident (*People* v. *Powers*, 147 N. Y. 104; *Matter of Altman*, 87 Misc. 255; *James* v. *Allen*, 3 Mer. 17; *Thomson's Exrs.* v. *Norris*, 20 N. J. Eq. 489), especially where, as here, the statute makes specific reference to both. I think it is also clear that the alumnæ association, limited in its activities to graduate nurses of the Presbyterian Hospital who are members of the association, is not a charitable corporation. (*Matter of Shattuck*, 193 N. Y. 446; *Sherwood* v. *American Bible Society*, 1 Keyes, 566.) If, therefore, it is to be exempted at all under section 221 it can only be as a " benevolent " corporation.

At the outset we must divest our minds of any thought that an association is charitable because it is composed of those whose occupation it is to nurse the sick. The bequest here is not to destitute persons who are in need of nursing nor to nurses who are destitute. It is to a corporation whose membership consists of a restricted group of nurses whose only necessary qualification consists in graduation from the school of nursing of a particular hospital. A bequest not otherwise charitable is not rendered so because it is to persons who follow an employment which is noble and appealing. Neither the law of charities nor section 221 of the Tax Law creates any exemption in favor of those who minister to the sick as distinguished from persons engaged in any other occupation. Moreover, the general policy of the law in cases of this character is to require all to bear in just proportion the burdens of government and, therefore, to construe strictly statutes exempting property from taxation by denying exemptions which depend on doubtful implications. (*People ex rel. D. K. E. Society* v. *Lawler*, 74 App. Div. 553; affd., 179 N. Y. 535; *People ex rel. Delphian Lodge* v. *Cahoon*, 179 App. Div. 287; *People ex rel. N. Y. Lodge No. 1* v. *Purdy*, Id. 805; affd., 224 N. Y. 710.)

The test of a charitable use and a charitable corporation is the same. (*Matter of Beekman*, 232 N. Y. 365, 370; *Matter of Rockefeller*, 177 App. Div. 786; affd., 223 N. Y. 563.) That test was stated in a leading case (*Matter of MacDowell*, 217 N. Y. 454) as follows: " If the purpose to be attained is personal, private or selfish, it is not a charitable trust. When the purpose accomplished

is that of public usefulness unstained by personal, private or selfish considerations, its charitable character insures its validity." Measured by these standards the alumnæ association is neither charitable nor benevolent. It cannot be held to be a benevolent corporation without including, as benevolent, corporations which have never been, and ought not to be, recognized as such. In no essential particular does it differ from a trade union, club, professional organization, fraternal order or mutual benefit association, all of which, by the great weight of authority, have been denied exemption. Such bodies, also, are organized to secure a " common fellowship " among their members and to promote their " interests " by legitimate means. Most, if not all of these, like the alumnæ association, maintain benefit funds of some kind and, like it, are organized to maintain a club house for the benefit of members. Like the alumnæ association, they collect dues from their membership and, as the authorities soon to be cited will show, they too have, from time to time, been the recipients of bequests and other forms of gift. To my mind the corporate purposes of the alumnæ association, considered separately or collectively, reveal all the characteristics of a trade or professional organization, fraternal order or mutual benefit organization and, as such, is not exempted from taxation by section 221.

The alumnæ association is essentially a co-operative enterprise, apparently organized and to a large extent sustained by members. For the advantages which it offers to its members they pay dues, which, except for the pension and benefit funds, are approximately the equivalent of the general expenses of the organization. Almost all the contributions of third persons to the alumnæ association have been made to its two special funds. The revenues used for the general purposes of the association are those not principally derived from gifts, testamentary or otherwise, but are the proceeds of dues, the payment of which by the membership is not for any purpose which is charitable or benevolent. Such a corporation, it seems to me, is a mutual benefit association, the members paying dues in return for reciprocal benefits. (Zollman Charities, §§ 206–208.) The relation then becomes one of contract, not of charity, between the corporation and its members. It is one thing if by endowment or donation a corporation is established and sustained for the benefit of others (*Matter of Altman, supra*), even though the beneficiaries contribute something for the advantages received. (*Butterworth* v. *Keeler*, 219 N. Y. 446.) It is very different if it is established by its membership for their own benefit, intending that it be sustained by dues. If the latter, it is not converted from a non-charitable to a charitable corporation because it happens at

some time to become the recipient of charitable gifts. (See *Brown v. Societe Francaise*, 138 Cal. 475; *Old South Society* v. *Crocker*, 119 Mass. 1; *Coe* v. *Washington Mills*, 149 id. 543; *City of Philadelphia* v. *Masonic Home*, [Pa.] 28 Atl. 954; *Swift's Exrs.* v. *Beneficial Society of Easton*, 73 Penn. St. 362; *Bangor* v. *Masonic Lodge*, 73 Me. 428; *Scottish Rite Bldg. Co.* v. *Lancaster County*, 106 Neb. 95; *Mason* v. *Perry, supra; State* v. *Brawner*, 15 Mo. App. 597; *Commissioners* v. *Denver & R. G. Co. E. R. Assn.*, 70 Col. 592; *Sheren* v. *Mendenhall*, 23 Minn. 92.) The record here does not establish that the alumnæ association was organized by disinterested persons with the intention that it should principally be sustained by charitable gifts. On the contrary, if any inference can be drawn from the facts disclosed, it is rather that after the alumnæ association was incorporated it awakened from time to time the interest of charitable persons who have assisted its special funds with contributions. If so, it has not sustained the burden of establishing its exemption from taxation.

But we do not need to rest our decision on that ground alone, because the only corporate purpose that could at all be classified as benevolent consists in maintenance by the alumnæ association of its special funds. All its other purposes are either fraternal or professional. Without violation of its corporate powers it could apply its general funds, including this bequest, exclusively to these non-charitable purposes. To prevent this result it has become a settled principle of the law of charities that the right of a corporation to exemption must be determined from the articles of incorporation alone and that if any of its powers are not charitable, the corporation is not entitled to be classified as a charity. (*Matter of Beekman*, 232 N. Y. 365; *Matter of DePeyster*, 210 id. 219; *Matter of McCormick*, 206 id. 100; *Adye* v. *Smith*, 44 Conn. 60.)

The first and last of the purposes of the alumnæ association are " to promote a common fellowship among graduate nurses " and " to secure a permanent home or club house for its members." This is a fraternal and social, not a charitable or benevolent purpose and has been almost uniformly so held. (*Starr* v. *Selleck*, 145 App. Div. 869; affd., 205 N. Y. 545; *People ex rel. N. Y. Lodge No. 1* v. *Purdy, supra; Matter of Francis*, 121 App. Div. 129; affd. on opinion below, 189 N. Y. 554; *People ex rel. D. K. E. Society* v. *Lawler, supra; Matter of Dunham*, 121 Misc. 589; *People ex rel. Perry Lodge* v. *Clark*, 125 id. 618; *People ex rel. Silver Lake Mutual Assn.* v. *Clark*, Id. 622; *People ex rel. Perry Temple Assn.* v. *Clark*, Id. 625; *Boston Lodge Order of Elks* v. *City of Boston*, 217 Mass. 176; *Phi Beta Epsilon Corporation* v. *Boston*, 182 id. 457; *People* v. *Phi Kappa Sigma*, 326 Ill. 573.) The second corporate purpose is " to advance in every way the interests of all graduate nurses."

Here again the purpose is not charitable or benevolent, but professional. The aim is the " interests " of graduate nurses. This, especially when read in conjunction with the purpose already referred to, suggests activities which shall be of benefit to graduate nurses in their professional capacity. Such activities are those of a professional guild or trade union whose purpose it is to promote or defend the interests of a particular trade or profession. (*People ex rel. Medical Society* v. *Neff*, 34 App. Div. 83.) Belonging to this class are trade organizations, labor unions and medical and bar associations. The dominant purposes of such organizations, however worthy, are incompatible with ordinary conceptions of charity or benevolence even though their activities may at times include relief of destitute members. (4 Halsbury Laws of England [2d ed.], § 172, and cases cited.)

The order should be reversed, with costs, and the proceeding remitted to the Surrogate's Court for further action in accordance with this opinion.

FINCH, P. J., MERRELL and O'MALLEY, JJ., concur; MARTIN, J., dissents and votes for affirmance.

MARTIN, J. (dissenting). I vote to affirm. (See *Matter of Altman*, 87 Misc. 255; *Butterworth* v. *Keeler*, 219 N. Y. 446; *People* v. *Powers*, 147 id. 104, 110.)

Order reversed, with costs, and proceeding remitted to the Surrogate's Court for further action in accordance with the opinion.