**218**

The People of the State of New York ex rel. S'amuel Unter-myer et al., as Executors of and Trustees under the Last Will and Testament of Samuel Untermyer, Deceased, Relators, against Arthur J. McGregor, as Acting Commissioner of Assessment and Taxation of the City of Yonkers, Respondent.

The People of the State of New York ex rel. Samuel Unter-myer Park & Gardens, a Charitable Membership Corporation, Relator, against Arthur J. McGregor, as Deputy Commissioner of Assessment and Taxation of the City of Yonkers, Respondent.

Supreme Court, Westchester County, August 1, 1944.

*Gorfinkel & Adler* for relators.

*John J. Broderick, Corporation Counsel,* for respondent.

NOLAN, J.   These proceedings involve the assessment for taxation for the years 1942 and 1943, of nine parcels of land, part of the property owned by the late Samuel Untermyer.   The subject property extends from North Broadway, in the city of Yonkers, westerly to the Hudson River, and is known on the tax map of the city as Lots 1, 45, and 68 in Block 3535, which extend westerly from North Broadway to the Croton Aqueduct, Lots 46 and 150 in Block 3555, which extend from the Croton Aqueduct on the east to Warburton Avenue on the west, Lots 1 and 38 in Block 3560, which extend from Warburton Avenue westerly to the property of the New York Central Railroad Company, and Lots

1 and 32 in Block 3610, which are located west of the railroad property, and consist largely of land under water. These parcels were assessed separately, although they are considered by relators to be a single piece of property. The proceeding which involves the assessment for 1942 was brought by the executors and trustees of the estate of Samuel Untermyer, deceased, and during the pendency thereof Samuel Untermyer Park and Gardens, a corporation formed pursuant to the Membership Corporations Law, was permitted to join therein. The proceeding which concerned the 1943 assessment was brought by Samuel Untermyer Park and Gardens, which was the owner of the subject property on the date of the assessment complained of. The relators in these proceedings claim that the entire property is exempt from taxation by virtue of the provisions of subdivision 6 of section 4 of the Tax Law of the State of New York, and in particular that portion of the statute which reads as follows: " § 4. *Exemption from taxation.* The following property shall be exempt from taxation: * * * 6. The real property of a corporation or association organized exclusively for the moral or mental improvement of men and women, or for religious, bible, tract, charitable, benevolent, missionary, hospital, infirmary, educational, public playground, scientific, literary, bar association, library, patriotic, historical or cemetery purposes, or for the enforcement of laws relating to children or animals, or for two or more such purposes, and used exclusively for carrying out thereupon one or more such purposes * * * . Property held by trustees named in a will or deed of trust or appointed by the supreme court of the state of New York for hospital, public playground and library purposes, as set forth in this subdivision, shall be exempt to the same extent and subject to the same conditions and exceptions as if held by a corporation."

The learned Official Referee, to whom these matters were referred, and whose opinion is unquestionably entitled to great weight, has sustained relators' contention, and relators have moved to confirm his report.

The evidence discloses that the property involved was devised by the will of Samuel Untermyer to the State of New York, " as and for a public park and gardens ", to be known as " Samuel Untermyer Park and Gardens ", provided, however, that the State should within six months after his decease agree in writing with his executors to accept the property for such purpose. The State of New York did not so agree. The executors thereupon presented a petition to the Surrogate's Court,

New York County, praying for a decree that the property might be applied by the executors to some similar purpose, under the cy pres doctrine, and for instructions in respect thereto. The Surrogate's Court determined that the devise of the property was for a charitable and public purpose, that the particular purpose stated could not be accomplished, and that the cy pres doctrine was applicable, but refused to give instructions as to any proposed charitable application of the property, and authorized the executors to apply the property devised to some other charitable or public purpose as near as might be to the purpose stated, and, when a suitable plan should be formulated, to institute an appropriate proceeding for approval thereof. Thereafter, the executors, during the pendency of the proceeding affecting the 1942 assessment, presented to the Surrogate's Court a plan which contemplated the formation of the relator, Samuel Untermyer Park and Gardens, and the transfer of title to the real property devised to that corporation, to be maintained and operated as a public park and gardens, and as a public playground, and/or for horticultural purposes. The Surrogate's Court approved the plan submitted and authorized the executors and trustees to transfer and convey to the corporate relator, when organized, the property involved in these proceedings. Thereafter, the relator corporation was formed, the property was conveyed and has since been conducted as a park and gardens, open to the public at certain specified times, and in part, as a playground, also open to the public at stated times, and, for horticultural purposes. The gardens have been maintained, to some extent, and the grounds have been kept in condition by the use of funds supplied by the executors. The evidence is sufficient, in the court's opinion, to establish that a portion of the property was devoted to the uses contemplated when the relator corporation was formed, namely, a public park and gardens, a public playground, and for horticultural purposes, and that the property was so used, not only during the period when it was owned by the corporate relator, but also during the period when it was held by the executors, before the formation of the corporate relator, and that during such times the property was not used for any other purpose or for pecuniary profit.

It is urged by respondent that the purpose of the plan adopted by relators was to avoid taxation, and that it was therefore not promulgated and carried out in good faith. The evidence establishes that whatever may have been relators' purpose in that respect, the corporate relator was not organized as a pretense

for the making of pecuniary profit, and that there was no lack of good faith in the organization of the corporate relator to carry out its corporate purposes as expressed in its certificate of incorporation. Under such circumstances, if relators have brought themselves within the terms of the statute granting exemption from taxation, they are entitled to relief. If they have not, no relief may be granted. The Legislature, and not the court, must determine what property may be exempted from taxation. The court agrees that the determinations of the Surrogate's Court are not open to collateral attack in these proceedings. Those decrees, however, fall far short of determining the questions presented here. The learned Surrogate, obviously, did not determine that the corporate relator was organized exclusively for one or more of the purposes specified in subdivision 6 of section 4 of the Tax Law. His determinations were made pursuant to the provisions of section 113 of the Real Property Law, and were not subject to the rule of strict construction as against the executors. (See *Matter of Durbrow,* 245 N. Y. 469; *Matter of MacDowell,* 217 N. Y. 454; *Butterworth* v. *Keeler,* 219 N. Y. 446; *Matter of Cunningham,* 206 N. Y. 601; *Matter of Browning,* 165 Misc. 819.)

The issues in these proceedings present a question entirely different from that determined by the Surrogate, and respondent is not required to attack the decrees of the Surrogate's Court, collaterally or directly, in order to prevail. Even if the determinations of the Surrogate's Court were disregarded, the court would have little difficulty in deciding that a devise of property for use as a public park was for a charitable purpose, or that such use of property is a charitable use. Such a determination, however, does not answer the questions presented in these proceedings.

Citation of authority is unnecessary to sustain the fundamental rules which must be applied to the established facts. Statutes exempting property from taxation must be strictly construed, and if the exemption is not clearly expressed, it may not be presumed. The burden of establishing the exemption is on the person who claims it. Unless relators, therefore, have brought themselves within the strict terms of the statute which grants exemption, they may not succeed. It is apparent, from an examination of the statute upon which the corporate relator relies that there are two prerequisites for tax exemption: (a) the corporate owner must have been organized *exclusively* for one or more of the purposes enumerated in the statute;

(b) the property must have been used exclusively for carrying out thereon one or more of such purposes.

The statute further provides that " The real property of any such corporation * * * entitled to such exemption held by it exclusively for one or more of such purposes and from which no rents, profits or income are derived, shall be so exempt, though not in actual use therefor by reason of the absence of suitable buildings or improvements thereon, if the construction of such buildings or improvements is in progress, or is in good faith contemplated by such corporation ".

It is the court's opinion that relators have not established any right to exemption, with respect to the portion of the subject property lying west of Warburton Avenue. This property is separately assessed as four tax parcels, is physically separated from the balance of the property by a public highway, and the water front lots, including the land under water, are further separated from the balance of the property with no practical means of access therefrom, by the tracks of the New York Central Railroad. The validity of the assessment of any of the parcels in question does not depend on the validity of any other assessment. (*People ex rel. City of New York* v. *Keeler*, 237 N. Y. 332; *Bd. of Foreign Missions* v. *Bd. of Assessors*, 244 N. Y. 42.) It is established by the evidence that this property has never been used for any purpose by relators, and that it cannot be used for any of the corporate relator's purposes without the making of considerable improvements. The construction of such improvements is neither in progress, nor at present contemplated. (See *Matter of Syracuse University*, 214 App. Div. 375.) Even if it should be decided, however, that the property may be considered as a unit, and that it has been used exclusively for charitable purposes, it is nevertheless the court's opinion that relators may not succeed, with respect to any of the property involved. In the proceeding affecting the assessment for 1943 taxes, it is incumbent on the relator to establish, not only an exclusive use of the property involved for one or more of the purposes enumerated in the exempting statute, but also that it was organized exclusively for one, or for two, or more of such purposes. (Tax Law, § 4, subd. 6; *Matter of Bd. of Education, Jamestown* v. *Baker*, 241 App. Div. 574, affd. 266 N. Y. 636.) Whether relator was so organized must be determined by its articles of incorporation. (*Matter of Beekman*, 232 N. Y. 365; *Matter of De Peyster*, 210 N. Y. 216; *Matter of Kennedy*, 240 App. Div. 20; *Matter of Mohawk Mills Assn., Inc.*, 260 App. Div. 433; *Matter of American Agriculturist, Inc.*, 264 App. Div. 971.)

According to its certificate of incorporation, Samuel Unter-. myer Park and Gardens was incorporated for the following purposes, among others: "To acquire * * * all that portion of the estate known as "Greystone" located at Yonkers * * * and lying west of Broadway * * * and to develop, improve, maintain and operate such land as and for a public park and gardens, and, if and to the extent so determined by the directors from time to time, as and for a public playground and/or *for horticultural purposes* * * * to sell, assign, convey, and/or otherwise dispose of any part or parts of its property, * * * to mortgage and/or lease any part or parts of its property * * * and to use the proceeds resulting from any of the foregoing for any of its purposes, including, but without being limited, to the payment of all or any part of the expenses of maintenance, operating, development and improvement of all or any part, or parts of its property". It is thus established that the corporate purpose was not only to use the subject property as a public park and gardens, but also, to the extent to be determined by its directors, as a public playground *or* for horticultural purposes, and to sell, mortgage, or lease any part of the property and to use the proceeds for park, playground or horticultural purposes as its directors might decide. It may be conceded that use of the property as a public park and gardens is a charitable use. Use of such property as a public playground is also charitable, and such use is one expressly provided for by the exempting statute. Use of the property for horticultural purposes, if confined to such use as may be appropriate to use as a public park and gardens, or to some other public purpose, might also be considered a charitable use within the meaning of the statute. Relator, however, was not confined to horticultural use in connection with the development, improvement, maintenance or operation of the public park and gardens, or any other public use. No such limitation was imposed on the operation of the property for such purposes. For all that appears to the contrary, such use might be entirely independent of the public use, and for the private purposes and enjoyment of the members of the corporate relator, or their selected invitees or beneficiaries. The court does not intend to imply that the officers or members of the corporate relator have any such intention. The question involved, however, is one of corporate purpose and power, and not of intent, present or future. (*Matter of Beekman, supra; Matter of Mohawk Mills Assn., Inc., supra; Matter of American Agriculturist, Inc., supra.*) Horticultural purposes are not neces-

sarily charitable, nor are they necessarily scientific, as the word "horticultural" is commonly understood, nor do they fall within any of the other classes of purposes enumerated in the statute. It follows that the corporate relator was not organized exclusively for one or more of the purposes enumerated, and that the property involved in the proceeding which relates to the 1943 taxes may not be exempted from taxation.

The relators in the proceeding which involves the 1942 assessment are in no better position. If it be conceded that they held the property as trustees named in a will, it must still be established that they held it for playground purposes, or exclusively for such purposes and one or more of the other purposes heretofore mentioned. The evidence does not establish that such was the case. At the time of the commencement of the proceeding, the corporate relator was not in existence, and there was no certainty that it would ever be organized. Relators had applied to the Surrogate's Court for authorization to apply the property devised to some purpose similar to that expressed in the devise, under the cy pres doctrine. They had suggested to the Surrogate four possible dispositions which might be made. Among the suggestions made were proposals to dispose of the property to a governmental or charitable corporation to be devoted to some public or charitable purpose, other than that mentioned, for example as a hospital or educational institution, or to sell the property and use the proceeds for the establishment and maintenance of a public park or gardens in some other location, or for other public or charitable purposes. It is apparent that relators did not hold the property for "hospital, public playground, and library purposes", but did hold them, pursuant to the decree of the Surrogate's Court for such purpose as might be determined by that court to be appropriate to most effectually accomplish the general purpose of the devise. (Real Property Law, § 113.) It is alleged in the petition, upon which the writ of certiorari was issued, that relators "have maintained and operated the real property affected * * * as a public park, open to the general public, and the said property has been and is in actual use for a charitable and public purpose". In the court's opinion, such use is not alone sufficient to sustain the claim of tax exemption. The question in the case of the trustees, as in the case of the corporation, is not one of use alone, but of power to use for some purpose other than that prescribed by the statute. The motion to confirm is denied, and the motions to dismiss are granted, with costs in each proceeding. Settle orders accordingly, on notice.