Paul J. Widlitz, J.
The plaintiff association claims tax immunity as a nonprofit organization and seeks to have voided and cancelled of record the taxes assessed and levied against its real property located in the City of Glen Cove, Nassau County, for the years 1958 to date and all moneys paid under protest in payment of the said taxes returned.
*624 The first question to be determined is whether the plaintiff qualifies as a nonprofit organization under the formula presented by section 420 of the Real Property Tax Law. ‘
It is conceded that in November, 1956 the corporate name of plaintiff was changed to its present title, and in January, 1957 its certificate of incorporation amended, with the approval of the State Board of Social Welfare, substituting new purposes, powers, and provisions in place of the old.
The purposes of the association were to help people of Russian descent who were in distress, to establish and maintain a home for worthy and indigent aged men and women and to operate same, together with general religious objectives. The corporation was “ to receive and maintain a fund or funds of real or personal property, or both, * * * to use and apply the whole or any part of the income therefrom and the principal thereof exclusively for charitable, religious, scientific, literary, or educational purposes either directly by voluntary financial or other material assistance to individuals, * * * no part of such income or such principal shall be contributed to any organization whose net earnings, or any part thereof, inure to the benefit of any private shareholder or individual or any substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation.” In effect the amended purposes of the organization were geared to meet the requirements of subdivision 6 of section 4 of the Tax Law which was pertinent at the time and which provisions by the laws of 1958 had been re-enacted as section 420 of the Real Property Tax Law.
From 1952 to 1956 the plaintiff association had acquired several parcels of real property in the City of Glen Cove. Five of those parcels consisted of small dwellings which are the subject of this litigation, and the sixth parcel, which does not concern us, comprises a church (Russian Orthodox), 2 houses, and a library. In each of the above 5 dwellings reside 9 or 10 aged people, all of whom arrived in this country since 1950 after the second World War, they had refused repatriation and entered this country as displaced persons. These people are aged and unable to work, although ambulatory and reasonably able to care for themselves. They speak a common foreign language (Russian), and all have been recommended by individual members of the church, although the applicants themselves need not be church-paying members. The rate for room and board depends upon the status of each occupant. If the recipient is on relief, the County Welfare Department pays the plaintiff $85 a month; if a Social Security recipient, $60 a month is the rate. Should, however, a subsidizing relative be found, *625 the rate increases to $85 per month. A superintendent supervises the houses and receives $150 per month together with his room and board. The cooking and cleaning in each dwelling are accomplished by a matron whose stipend amounts to $210 a month and keep. One practical nurse makes the rounds of the homes once a day for which she receives $100 a month. A doctor, if required, is furnished by the County Welfare Department. The maintenance of these homes results in an annual recurring deficit which is made up by personal contributions and an annual charity party. The existence of these old-age homes, to say the least, is financially precarious. This observation is amply verified by the certified statement of operation submitted by the plaintiff’s accountant.
Periodic supervisory inspections have been made by the State Department of Social Welfare since 1953; the dwellings are exempt on the county tax rolls, and the plaintiff is treated as a charitable institution by the United States Treasury.
The statutory provisions of section 420 of the Real Property Tax Law impose two requirements — first that the property be owned by a nonprofit exempt organization, and secondly that the property be used exclusively for one or more of those exempt purposes recited in the certificate of incorporation.
The first test must be met by examining the purposes and aims of the plaintiff as recited in its amended certificate of incorporation, and should any of its powers and aims be one not enumerated in the prevailing statute, there exists no right to tax exemption (Matter of Beekman, 232 N. Y. 365; Matter of Kennedy, 240 App. Div. 20; Matter of Pace College v. Boyland, 4 N Y 2d 528; Great Neck Section, Council of Jewish Women v. Board of Assessors, 21 Misc 2d 142).
In resisting plaintiff’s claim, the defendants concede that the enumerated purposes of the plaintiff corporation as amended meet the statutory requirements, and this concession is verified by their action in exempting the properties from taxation for the years 1956 and 1957 and restoring them to the tax rolls in 1958. The defendants challenge plaintiff’s attempt to qualify under the second statutory requirement pertaining to the use of its property by asserting affirmatively that the properties are not used exclusively for carrying out one or more of the purposes recited in plaintiff’s certificate of incorporation. They point out that the plaintiff does not certify whether the occupants of the homes in question are aged and indigent, that at least one person works at an outside job, and that there has not been established any charitable purpose in the maintenance of the homes.
*626 The occupants of the dwellings in question were aged and indigent and in need of aid. The levying of minimum rates for board and room does not cancel the stamp of charity. Profits do not accrue; the rents received aid the plaintiff in carrying on its beneficent objectives (People ex rel. Young Men’s Assn. v. Sayles, 32 App. Div. 197, affd. 157 N. Y. 677; Matter of Mary Immaculate School of Eagle Park, 188 App. Div. 5), and the income is not directed to other than charitable purposes (Matter of Syracuse Y. M. C. A., 126 Misc. 431). Payment by the County Welfare Board does not forfeit the right for exemption (Temple Grove Seminary v. Cramer, 98 N. Y. 121; People ex rel. Board of Trustees of Mt. Pleasant Academy v. Mezger, 98 App. Div. 237; Matter of Syracuse Y. M. C. A., supra).
In Matter of Kennedy (240 App. Div. 20, 23-24, supra) the court stated: ‘ ‘ The test of a charitable use and a charitable corporation is the same. (Matter of Beekman, 232 N. Y. 365, 370; Matter of Rockefeller, 177 App. Div. 786, affd. 223 N. Y. 563.) That test was stated in a leading case (Matter of MacDowell, 217 N. Y. 454) as follows: ‘If the purpose to be attained is personal, private or selfish, it is not a charitable trust. When the purpose accomplished is that of public usefulness unstained by personal, private or selfish considerations, its charitable character insures its validity. ’ ”
It is apparent to this court that the plaintiff is organized as a nonprofit organization as dictated by section 420 of the Beal Property Tax Law, and its property is exclusively used for one or more of its designated purposes; it is, therefore, exempt from taxation.
The court now concerns itself with the procedural question presented by the pleadings wherein the defendants urge that the proper remedy is by judicial review under article 7 of the Real Property Tax Law (certiorari) rather than an action in equity as presented here. The defendants press their argument that the plaintiff is precluded from equitable relief because there exists an adequate remedly at law under article 7 of the Real Property Tax Law dealing with certiorari to review, which contention they strengthen by pointing to section 720 of the Real Property Tax Law providing that ‘1 If the court determines * * * that the assessment being reviewed is illegal it shall order the assessment stricken from the roll ”.
It should be noted at this point that the complaint is devoid of the necessary allegation that there exists no adequate remedy at law and this court grants the motion made at the termination of the plaintiff’s case to so amend, and the pleadings are further *627 amended so as to conform to the proof (CPLR 3025, subd. [c]). The prosecution of this action has been lagging since its initiation in the year 1958 and justice dictates a prompt disposition of the equities between the parties.
It is well established that the remedy of certiorari under article 7 of the Real Property Tax Law is not the sole and exclusive remedy available to the plaintiff. Equity will afford relief where there is involved the jurisdictional power of the municipal authorities to assess (Lewis v. City of Lockport, 276 N. Y. 336 and cases cited; Cooper. Union v. City of New York, 272 App. Div. 438). In such case the illegality is not manifest upon the record and can be established only extrinsically and collaterally as distinguished from assessments which the assessors have the ‘ ‘ power to levy, ’ ’ but which are void because made in a defective manner.
Having determined the plaintiff’s real property to be exempt from assessment of taxes, this court must continue to shape its decree in accordance with the equities of the case and must concern itself with the taxes paid by the plaintiff for the years 1958 to date. (Bonham v. Coe, 249 App. Div. 428, affd. 276 N. Y. 540; Weil v. Atlantic Beach Holding Corp., 1 N Y 2d 20.)
The city taxes paid for the years 1958 to 1963 inclusive total $5,527.47, and the school taxes paid for these years total $7,496.48. It cannot be denied that the money so collected by the defendants has been utilized to pay their recurring obligations, but, as has been so effectively stated in Horn v. Town of New Lots (83 N. Y. 101, 107): ‘ ‘ With this capacity must of need go the power to pay, the power to get money to pay, the power and capacity to receive money for its use in making payment. And therewith must go all incidents that follow that power and capacity. If by chance it gets the money of any one without the right to it, for the purpose of meeting its obligations, and applies that money to its own use in meeting them, it follows that it incurs a liability to that person therefor, as well as would a natural person, or any municipal corporation, doing the same thing.”
The right to recover the taxes paid because of illegal assessment is also firmly established in Mutual Life Ins. Co. v. Mayor (144 N. Y. 494); Deshong v. City of New York (176 N. Y. 475) and Mercury Mach. Importing Corp. v. City of New York (3 N Y 2d 418).
There is left for this court to dispose of the one remaining argument presented by the defendant, City of Glen Cove, in its assertion that the properties violate the pertinent building zone ordinances for the City of Glen Cove. At no point of the trial was *628 there established any existing violation, and the defendant city-should not be permitted to enforce its building code through the media of denial of tax exemption.
Accordingly, judgment is granted canceling and nullifying as void any outstanding taxes constituting a lien against the real property in question and judgment is granted plaintiff against the defendant, City of Grlen Cove, in the amount of $5,527.47 and against the school district in the amount of $7,496.48.