## KORSSTROM v. BARNES et al.

(Circuit Court, W. D. Washington, N. D.   February 5, 1909.)

### No. 1,568.

**1. CHARITIES (§ 19*)—TRUST ESTATES—UNCERTAINTY AND INDEFINITENESS AS TO TRUSTEES.**

A testator devised and bequeathed all of his property to trustees, with directions that it be sold and the proceeds, after payment of his debts, paid over to "the trustees of the Theosophical Society at Adyar, Madras, India, or wherever the said Theosophical Society may be located, appointed or acting under a deed of trust dated the 14th day of December, 1892, and duly enrolled, * * * to be used for the purpose as far as possible in obtaining translations into English of the ancient Hieratic Scriptures believed to exist in India and elsewhere, for the use of the Theosophical Society and its branches all over the world." *Held*, that the bequest was void for uncertainty in the designation of the trustees.

[Ed. Note.—For other cases, see Charities, Dec. Dig. § 19.*]

**2. CHARITIES (§ 22*)—TRUST ESTATE—PURPOSE.**

Such bequest was also void for uncertainty in the designation of the purpose to which it was to be devoted.

[Ed. Note.—For other cases, see Charities, Dec. Dig. § 22.*]

**8. PERPETUITIES (§ 8*)—REMOTENESS OF GIFTS AS·CHARITIES.**

Such bequest was also void. as in violation of the rule against perpetuities.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 57–66; Dec. Dig. § 8.*]

In Equity.   Suit to establish the complainant's claim, by inheritance, to the residue of the estate of her deceased brother in the hands of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

trustees, and for an accounting. Heard on bill and answer. Decree for complainant.

Fenton & Crews and W. H. Bard, for complainant.
Max C. Wardall, H. D. Moore, and F. T. Reid, for defendants.

HANFORD, District Judge. The complainant, who is admitted to be a sister and the sole heir of Charles A. White, deceased, attacks the validity of her brother's will, and the object of her suit is to recover possession of his estate, or the residue thereof, remaining in the hands of the executors named in his will. The will was executed in this state by the testator, who was a citizen of this state, and who died leaving real and personal property in this state admitted to be of more than $50,000 value. The testator died in this state in the year 1898, and thereafter his will was duly admitted to probate and letters testamentary were issued by the superior court for King county to the defendants, they being the executors named in a codicil, and they have acted as such executors and as trustees under the will, and admit that they now have the title to and possession of part of the estate. The following is a copy of the material parts of the will:

"I, Charles A. White of the city of Seattle, county of King, state of Washington, being of sound mind and memory, do hereby make, publish and declare this to be my last will and testament, that is to say:

"First: I direct that my body be embalmed and cremated as soon as possible after my death, at the nearest crematory existing at the time to the place of my decease.

"Second: I direct that my funeral expenses, the expenses of my last sickness, and cremation, and all debts owing by me, be paid as soon as possible after my decease and out of the first moneys that shall come to the hands of my executors, hereinafter named, from any portion of my estate, real or personal.

"Third: All the rest, residue or remainder of my estate, real, personal and mixed, wherever situated, I give and bequeath to my executors, Frank I. Blodgett and Henry W. Stein, or the survivor of them, in trust nevertheless and upon the following conditions, to-wit:

"That the said trustees or the survivor of them as speedily as consistent with the best interest of my estate, shall sell all the property belonging to my said estate, and after paying the necessary and proper expenses of said trust, pay the proceeds of said sale to the Trustees of the Theosophical Society at Adyar, Madras, India, or wherever the said Theosophical Society may be located, appointed or acting under a deed of trust, dated the 14th day of December, A. D., 1892, and duly enrolled.

"And I direct that the receipt of the said trustees or the reputed trustees for the time being, shall be sufficient discharge for the said legacy. It is my express will that the said legacy to the said Theosophical Society in India be used for the purpose as far as possible in obtaining translations into English of the ancient Hieratic Scriptures, believed to exist in India and elsewhere, for the use of the Theosophical Society, and its branches all over the world.

"Fourth: It is my will, that upon my death this my will shall be proved as such in the superior court for the county of King, state of Washington, and order of probate thereof obtained, and that no further proceedings be had or taken in the matter of this my will nor in the matter of my estate by said superior court, tribunal or officer whatsoever; and it is my will that, upon my death my said executors forthwith enter into possession of my estate, and the whole thereof, and that absolute title rest in my said executors, hereinafter named; in trust however as hereinbefore provided, without any other or further proceedings in or on the part of said superior court, board, tribunal or officer whatsoever; and shall be managed by them with-

out accountability therefor, or supervision thereof, or control thereof, of any other court, board, tribunal or officer whatsoever.

"Fifth: I further direct that my said executors pay no claim or claims that may be made by my former wife, Elin M. C. White, or whatever her name may be, except in accordance with my statement of accounts, hereto attached, unless otherwise ordered in a court of justice, having competent jurisdiction.

"Sixth: I hereby nominate and appoint as the executors of this my will and testament, Frank I. Blodgett and Henry W. Stein, both of Seattle, Washington, and direct that they be not required to give bonds.

"Seventh: I hereby revoke all former wills made by me."

This court has heretofore decided that the will is a valid testamentary conveyance of all the property and pecuniary rights of the testator to the executors as trustees, and that the complainant cannot prevail in an action at law to recover possession of the estate (156 Fed. 280); and in a separate suit the court has rendered a decree establishing the superior right, in equity, of purchasers in good faith from the executors and trustees of part of the real estate; and in a preliminary stage of this case, the court has decided as follows:

"The will is valid as a testamentary conveyance of property, and the legal title to all of the testator's property became vested in the defendants Barnes and Stein as trustees, with full power to sell all of it at their discretion for the purpose of converting it into money for the benefit of the estate. The bill contains no specific charge of fraud, or breach of trust, sufficient to justify a decree annulling any sale or contract of sale made by said trustee defendants. Therefore the vendees have good titles as against the complainant.

"The bequest of the residue of money remaining after complete administration of the estate to trustees of the Theosophical Society is void for uncertainty in two important particulars, viz.: The legatees cannot be identified; and the intended use of the bequest cannot be ascertained or defined so as to be declared a charitable use, which can become effective through the exertion of the power of a court of equity to assume control of trusts, appoint trustees when required, and direct application of funds according to declared intentions of donors, or by the cy pres rule. Therefore, the defendants Barnes and Stein must be held accountable for the money belonging to the estate as trustees of the testator's heirs."

That decision was made upon consideration only of the will itself and averments of the bill of complaint, and since it was rendered the defendants have filed an answer, and the case has been submitted for final determination upon the bill and answer.

In rendering a decision upon the bill and answer, the court must accept as true all the averments of the answer as to the disposition made of the estate, and as to the honesty and good faith of the defendants, so that the rights of the parties to be adjudicated relate only to the residue of the estate, which the defendants now hold.

The material facts admitted by the answer are as above recited, and the controverted points are as follows: In the tenth paragraph of the amended bill of complaint, the complainant avers, in effect, that there was not at the time of the execution of the will, nor at the time of the death of the testator, nor has there been at any time since the execution of said will, any Theosophical Society at Adyar or elsewhere, nor any trustees of the Theosophical Society appointed or acting under any enrolled deed of trust; that there was not at the time of the execution of the will, nor has there ever been since

said time, any Hieratic Scriptures, existing in India or elsewhere, which might be translated into English; that the third paragraph of the will is void and incapable of enforcement because vague, indefinite, uncertain, and ambiguous, so that it cannot be ascertained therefrom in what manner the alleged trust therein is to be executed, nor what was the object of the alleged trust, nor what person or society or association was intended as the beneficiary; and that the will is void for the reason that it fails to make final disposition of the estate by a donation of the residue thereof to a discoverable devisee for his own use or for any ascertainable use. The answer responds to these averments by denying the same, and by averring to the contrary that at the time of the making of the will the testator was a member of the Theosophical Society, which was then and at all times since has been, and now is, a society organized for benevolent, charitable, and scientific purposes, with local branches in all the principal cities of the world, the headquarters of the society being at Adyar in the province of Madras, India, and that there was no other like society existing, "all of which was commonly known to the whole world, and to the said testator in particular"; that on the 14th day of December, 1892, Henry Steel Olcott, the founder and president of said society, held in his own name title to certain real estate and personal property, but in trust for the said society, and on that date he executed a deed of trust to certain trustees named and their successors, which deed of trust was duly and regularly enrolled in the office of the registrar at Chingleput, that being the office for the local registration of deeds for the district in which Adyar is situated; that the testator at the time of making his will had full knowledge of said deed of trust and of the trustees therein named, and that he intended to constitute the trustees named in said deed of trust as trustees to receive the residuary legacy for and in behalf of the said Theosophical Society; "that by the term 'duly enrolled,' as applied to the said deed of trust, the said testator intended and meant the said registration of the said deed of trust in the office of the registrar at Chingleput, Madras, India"; that at the time of the execution of the will there was, and ever since has been, and now is, at Adyar, Madras, India, a large library, containing thousands of manuscripts, priestly writings in Sanscrit, Pali, East Indian, and South Indian, and other languages, many of which manuscripts are extremely rare, and the translation of which into English would be of great value to literature, science, and philosophy, which library was accumulated, owned, and is and was maintained by the trustees mentioned in said deed of trust, all of which was known by the said testator at the time of making his will; that there was at the time of making said will, and now is, in existence in various parts of the world, ancient Hieratic Scriptures in other languages than English, some of which have been discovered since the date of the execution of the will; that the objects and purposes of said Theosophical Society are, and ever since its organization have been, the same as set forth in said deed of trust, from which the following statement is quoted:

"The objects of the said Society are (1) the formation of the nucleus of a Universal Brotherhood of Humanity without distinction of race, creed, sex, caste or colour. (2) The promotion of the study of Aryan and other Eastern Literatures, Religious Philosophies and Sciences. (3) The investigation of unexplained laws of Nature and the psychical powers of man. In connection with the above mentioned objects the objects of the Society shall also include (4) the examination of religious systems from an unsectarian standpoint for the purpose of demonstrating the substantial identity subsisting beneath their apparent diversity. (5) The revival of research connected with occult science and esoteric philosophy. The objects of the Society shall also include the establishment, taking over, carrying on, reconstitution or reestablishment of any Subsociety, Club or other Body with objects similar to or connected with those of the Society, or generally having objects of a philanthropic, benevolent or charitable nature, and shall include the carrying on of any manufactory, trade or business for the purpose of assisting the operation of the Society in printing and disseminating literature, or otherwise calculated to promote or assist the objects of the Society hereinbefore declared."

From all the sources of information to which the answer guides, including common knowledge, and the trust deed, the court cannot find that the Theosophical Society is a completely organized compact body having a head and members subject to discipline and capable of acting as an independent entity. On the contrary, it appears to be merely a voluntary association of a few persons as the nucleus of a hoped-for universal brotherhood; its branches are detached voluntary associations and clubs, and in its entirety it comprehends all freethinkers and anti-sectarians interested in the study of ancient religions, astrology, mysticism, and occult science, having an infusion of charitable sentiments and stimulated by generous impulses, constituting an aggregation of independent individuals related to the nucleus association by sympathy, but not bound to it by any obligation, financial or moral.

The deed of trust confers upon the trustees latitudinarian powers in the use of whatever property or money may come into their hands, including power to accept voluntary contributions, gifts, legacies, and loans, and to expend or invest the same, and provides that they may set apart any gift or legacy for any special or particular purpose which may be indicated by the donor; and it provides for the succession of members so as to perpetuate the trusteeship, and further provides that, if at any time the objects of said society should altogether fail, so that for a space of five years successively no money shall have been paid or applied by the said trustees for or towards the objects and purposes of the society, the trustees for the time being are to use, apply, and deal with the funds vested in them "in such manner and for such purposes either religious, philanthropic, charitable or civil, not being in any way for their own personal benefit, as the majority of the trustees for the time being shall resolve and determine, and to lease, convey, assign, or dispose of the same accordingly."

As set out in the answer, the deed contains no evidence of its enrollment anywhere, but does contain the following indorsement:

"Registered as No. 2940 of Book 1 Vol. 102 Pages 231-238 22nd December, 1892. Fee Paid No. 5. L. C. Remknent, Registrar."

To ascertain the true basis upon which the decision must rest, it is necessary to construe the third paragraph of the will in accordance with the intentions of the testator as indicated by the words and phrases which he used in making a bequest of the cash proceeds of the residue of his estate. In this connection it is first to be observed that the will provides that the money is to be paid to individuals in trust for a specified purpose. They cannot, consistently with the terms of the will, appropriate any of the money for their personal benefit, nor make a testamentary disposition of it; and their heirs and personal representatives cannot acquire any interest in the fund by inheritance; they are to take the fund in their official character as a board of trustees of the so-called "Theosophical Society," and expend it for a specified object, if that be possible, and, in case of impossibility, there is no use to which the money can be applied in accordance with the testator's directions.

It is next to be observed that, although the will expresses the idea that the Theosophical Society is to be the beneficiary of the bequest, nevertheless no authority is given to pay any of the money to the society, nor to expend it for the general purposes of the society. As contemplated by the testator, the benefit to the society was to be through the expenditure of the money in making translations of Hieratic Scriptures. To execute the will, it is necessary to pay the money to the trustees designated, if they can be found and identified. The will does not name the individuals to receive the legacy, nor indicate the number of them, nor the place where they reside, but refers to a certain document in which they are designated which is described as a deed of trust, of which the Theosophical Society at Adyar is the cestui que trust, the grantor is not named, no property or thing granted, or object of the trust is mentioned, and no place is referred to where the document may be found. The identifying features to be looked for are the trust character of the document, the name of the cestui que trust, its date, and its enrollment. Any deed of trust to the Theosophical Society dated the 14th day of December, A. D. 1892, executed by any person or number of persons or corporation to any grantee or grantees, made anywhere and enrolled anywhere, will meet all the specifications of the will. The description of the trust deed being thus meager, and considering the ease with which a spurious document might be formulated, rigid strictness is required in the application of the descriptive words of the will in any attempt to identify a document represented to be the trust deed referred to.

It is next to be observed that there is no limitation whatever of time within which the trust is to be executed or the money expended. If the trustees to whom the legacy is to be paid are a self-perpetuating permanent body, they may hold the money indefinitely waiting for the discovery of Hieratic Scriptures to be translated, and, so long as they hold the money for that purpose, they cannot be accused of disregarding the directions of the testator or of a breach of trust.

The will provides that the legacy is "to be used for the purpose, as far as possible, in obtaining translations into English of ancient Hieratic Scriptures, believed to exist in India or elsewhere." All

that can be assumed with any degree of certainty with respect to the writings or engravings or prints to be translated, is that they are ancient, in a language other than English, and Hieratic; that is, sacred or priestly, or Egyptian, or difficult to be deciphered.

The necessary deduction from the foregoing analysis is that the third paragraph of the will must be construed as follows: The defendants are required to convert the whole residue of the estate into money, the money is bequeathed in trust to an official board, the members of which are designated in an enrolled deed of trust which cannot be identified with certainty, for a use which cannot be defined with certainty, and for the benefit of a cestui que trust, which is merely an aggregation of people in all parts of the world and not an organized entity, and there is no prescribed limitation of time within which the trust is to be executed or the fund expended.

In this view, it is as impossible to control or execute the trust according to the intentions of the testator as it would be if he had made a bequest of money to be expended in obtaining translations into English of hieroglyphics for the use of all mankind. The practical difficulties in the way of carrying into effect the provisions of the will, in so far as it attempts to dispose of the residue of the estate, have not been overcome, but rather augmented, by the averments of the answer. The deed of trust which it sets forth appears to have been registered, but that is not equivalent to enrollment. The word "enrolled" signifies the faithful copying of the entire document into a record; registration may be the copying of the document in extenso, or merely the recording of particular facts as to the time of its presentation to, and inspection by, the custodian of the record and a summary of its contents. The answer presents for consideration a deed of trust, the existence and contents of which are alleged to have been known to the testator, and which contains the names of grantor and grantees, and which was registered but not enrolled, as being the identical deed to which his will refers. If he did have knowledge of this deed, the omission of the names of the parties and the variance in referring to an enrolled deed raises a strong natural presumption that it is not the document containing the names of the trustees whom he selected to receive and handle the bequest.

The answer introduces additional uncertainty as to the use of the fund by averring that there is at Adyar a library containing voluminous manuscripts and priestly writings, and that Hieratic Scriptures have been discovered elsewhere, all of which are in languages other than English. It is manifest, therefore, that expenditure of the funds to obtain translations of any of these manuscripts or writings or scriptures involves necessarily a selection from a mass of material containing wide diversity of ideas, theories, and dogmas, and such use of the money would be according to the preferences of strangers to the testator, rather than according to his will.

The answer in no wise meets the objection to the will on the ground that it does not create a right of property to become vested in beneficiaries within a period of 21 years after the termination of lives in being at the time of the testator's death. The bequest is under the

ban of the rule forbidding the creation of an estate in perpetuity, and is therefore void.

This conclusion determines the case in favor of the complainant, and a decree will be entered accordingly.