In the Matter of the Estate of MARTHA M. HALL, Deceased.

Surrogate's Court, New York County, August 22, 1935.

*Miller, Owen, Otis & Bailly*, formerly *Miller, Boston & Owen*, formerly *Hornblower, Miller, Miller & Boston* [*Nathan L. Miller, Harold Otis, Harry Sammet* and *William FitzGibbon* of counsel], for the petitioner.

*Guggenheimer & Untermyer* [*Alvin Untermyer* and *Mitchell Salem Fisher* of counsel], and *Schreiber, Buchter & Rathheim* [*Benjamin F. Schreiber, Alfred Rathheim* and *Harold M. Hoffman* of counsel], for James Jay Morgan, individually, and James Jay Morgan and Laurence A. Steinhardt, as executors of and trustees under the last will and testament of Martha M. Hall, deceased.

*John J. Bennett, Jr., Attorney-General* [*Robert P. Beyer, Assistant Attorney-General*, of counsel].

DELEHANTY, S. By her will deceased provided:

" *Thirteenth.* I have discussed from time to time, in detail and at length, with my friend James Jay Morgan, certain long considered and definite plans for the application and distribution of the bulk of my fortune for public and private charitable and scientific purposes. Such plans contemplate contributions to private charities, to existing public institutions, the possibility of establishing a new institution, with an appropriate building and an endowment,

creating a foundation as a memorial to my father William Henry Hall, and, in general, the application of my fortune to progressive human welfare work, without, however, specifying any amounts for any one or more purposes, and without finally determining upon any one or more projects or plans. What I have said above is merely to indicate the field within which I desire to participate. As present conditions are subject to extraordinary and sudden changes I realize, as Mr. Morgan knows, that it might be advisable to concentrate upon one or more agencies or plans for the advancement of charitable or scientific work to the exclusion of others. It is not therefore my intention at this time to express any wish or preference in respect of any particular charity, plan or project, hereinabove mentioned. Without therefore intending or desiring to place any limitations upon the sole and absolute discretion of Mr. Morgan, I hereby give, devise and bequeath to my Executors and Trustees, hereinafter named, the entire residue of my estate, real, personal and mixed, *in trust nevertheless* to dispose of the same in accordance with the sole and unlimited discretion of James Jay Morgan, hereby vested in him, for the benefit and advancement of public and private charitable and scientific objects and purposes, or any one or more of such purposes and objects as he may from time to time determine upon, without limit as to amount, terms or conditions, having full confidence in his willingness and ability to carry out my intentions."

A brother of deceased seeks a construction of this paragraph. He is the sole distributee of deceased. If the testamentary dispositions attempted by the paragraph quoted are not valid, petitioner will be entitled to a substantial participation in the assets of deceased.

Briefly stated, the argument is made by petitioner that the quoted paragraph permits disposition of the residue of the estate for private objects and purposes and that the gift must fail for this reason.

On the subject of charitable gifts there is a wealth of literature in which two major propositions are advanced as reasons for the results reached in the particular cases.

The strict constructionists (those who deal with provisions for charity in testamentary instruments as requiring rigid control) find support for their viewpoint in a line of cases of which the most frequently cited is *Matter of Shattuck* (193 N. Y. 446). That case said, among other things: " The possible devotion of the income of said trust in whole or in part to private use necessarily affects the entire gift and requires that the same shall be held invalid."

The liberals say that words of a testator are not to be given a narrow and literal meaning when that would defeat the essential

and ascertainable intention of the testator. They assert that the intent and purpose of the testator should first be sought and if that purpose is to accomplish a public good, the words used by him will be given a construction consistent with that purpose.

Here emphasis is placed by petitioner upon that phrase in the will which gives the residue in trust " for the benefit and advancement of public and private charitable and scientific objects and purposes or any one or more of such purposes and objects * * * without limit as to amount, terms or conditions." It is urged that language could not be found which more clearly permitted the devotion of the funds of the trust to private uses. Hence petitioner draws the conclusion that the gift is invalid.

Respondent-executors urge that the quoted phrase is a part of an entire paragraph which when read as a whole can leave no doubt whatever of the interpretation which should be given to the words used by deceased. They say that no one reading the entire paragraph can doubt that the plans of deceased contemplated only a public service operating through whatever public or private agencies would best effectuate it. They assert that nowhere in the text can be found any support for the thought that there was authorized by deceased any personal gift or benefit to any private individual or that the profit motive operated at all.

*Matter of Shattuck (supra)* has undoubtedly caused great confusion in the law of charitable trusts. In *Butterworth* v. *Keeler* (219 N. Y. 446, at p. 450) CARDOZO, J., said: " The *Shattuck* case lays down no principle of large and general application. It defines the meaning of a particular will, and later cases have held that it must be limited to its special facts." In *Matter of Durbrow* (245 N. Y. 469, at p. 475) POUND, J., wrote, reversing a decision of the Appellate Division which was based on *Matter of Shattuck*, and said: " It is based on *Matter of Shattuck* (193 N. Y. 446) which has been strictly confined to its own facts by later and better considered cases." It is to be hoped that if this controversy reaches the Court of Appeals that court will now say that *Matter of Shattuck* is not sound as a guide to interpretation of the terms of charitable gifts.

In the same *Matter of Durbrow*, Judge POUND said: " The intention to make a gift for charitable and religious purposes pervades and dominates the whole bequest and the court will give it effect if it is possible so to do by the application of the most liberal rules of construction that the law will permit. * * * [A testator's] language should be construed in a broad and liberal spirit in accordance with his intention and the gift upheld, although the will may be susceptible of a construction which would permit the gift to be used for private or secular purposes."

It is only by what Judge POUND called " a contrarious reading " of the terms of this instrument that a conclusion can be reached that by its terms private purposes are to be served. The true rule of interpretation forbids this contrarious reading. (*Matter of MacDowell*, 217 N. Y. 454; *Matter of Durbrow, supra.*)

There is no need that this court should further add to the literature of charitable gifts. The question at issue has been stated. The respective views which might be taken of it have been stated. The conclusion reached by this court is that the plain meaning of the language of deceased is that she intended that her property should be devoted to public uses and benefits and that the entire text of her paragraph thirteenth compels a construction that the gift therein provided for is valid.

Submit, on notice, decree construing the will accordingly.