In the Matter of the Estate of HENRY A. CARPENTER, Deceased.

Surrogate's Court, New York County, June 22, 1937.

*Metcalf & Giles* [*Orlando P. Metcalf* of counsel], for the petitioner, executor.

*Shearman & Stirling* [*Chauncey B. Garver* and *E. Lacy Finnan* of counsel; *George B. Berger*, of the Pennsylvania bar, associate counsel], for the respondent Harold E. Carpenter.

*John J. Bennett, Jr., Attorney-General* [*Robert P. Beyer, Assistant Attorney-General* of counsel], for the State of New York.

FOLEY, S. In this proceeding for the construction of the will there arises the question of the validity or invalidity of a trust directed by the testator to be created of his entire net estate. The fund amounts to approximately $110,000. The language of the will is novel. The gift is to his executor and trustee with the following directions: " The income shall be paid and disbursed to such highly evolved individuals, with much occult knowledge, who are ceaselessly working for the advancement of the Race and the allevia [*sic*] of the suffering of Humanity, as to him, my said Executor and Trustee, or his successor, may seem worthy, and be deemed wise. · It is my clear intention herein to vest in my Executor and Trustee, or his successor, full and free discretion, power and authority in the payment of the income as above set forth." Counsel for all the interested parties concede that the word " allevia " contained in the paragraph was a clerical error and that the testator intended to use " alleviation."

The decedent left as his sole next of kin his brother. By his answer the latter has contested the validity of the trust and has raised the following contentions:

(1) That the trust attempted to be created is to individuals for a private and not a charitable purpose.

(2) That the trust is void because it is made without limitation and is violative of our Statute against Perpetuities.

(3) That the direction to pay income to " such highly evolved individuals with much occult knowledge " cannot be carried into effect or validly accomplished.

The Attorney-General of the State of New York has appeared under the statutory duty cast upon him to see that charitable gifts are enforced. He and the trustee contend that the gift is

valid as a charitable trust. By way of alternative contention, counsel for the trustee argues that, if the bequest is void for indefiniteness or for any other legal reason, the trust may be saved by the application by the surrogate of the doctrine of *cy pres.*

The rules of law applying to charitable trusts are now well established. Difficulty occasionally arises, however, in their application to particular wills. The trend of the Court of Appeals in recent years has been towards liberalization. The narrow view adopted in *Matter of Shattuck* (193 N. Y. 446), decided in 1908, where the trust was held void, has been liberalized by later decisions ranging from *Matter of Robinson* (203 N. Y. 380) and *Matter of Cunningham* (206 id. 601) to the more recent cases of *Matter of Durbrow* (245 id. 469) and *Matter of Frasch* (Id. 174), which affirmed my own decision in 125 Misc. 381. A careful and thorough analysis of the trend of these decisions may be found in a recent article in the Bulletin of the New York State Bar Association, June, 1937, by John Godfrey Saxe, entitled, " Our New York System of Charities — The Cy Pres Doctrine."

The following rules are pertinent to the determination of the issues involved here: " In its legal sense, charity comprises four principal divisions: (1) Trusts for the relief of poverty and distress; (2) trusts for the advancement of education; (3) trusts for the advancement of religion; and (4) trusts for other purposes beneficial to the community not falling under any of the preceding heads." (11 C. J. p. 314; *Commissioners for the Special Purpose of the Income Tax* v. *Pemsel*, L. R. [1891] A. C. 531.)

The provisions of a will relating to gifts for charitable purposes are to be construed in a broad and liberal spirit, and the construction that will uphold the validity of a public trust is to be favored. (*Matter of MacDowell*, 217 N. Y. 454; *Matter of Hall*, 156 Misc. 841; affd., 247 App. Div. 719; affd., 272 N. Y. 428.)

The Tilden Act directs that no gift or bequest " to a religious, educational, charitable, or ·benevolent uses * * * shall be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries." (Pers. Prop. Law, § 12, subd. 1; Real Prop. Law, § 113, subd. 1.)

The rule of liberality has its limits. These limits encompass a public charity. They may not be extended into the forbidden field of a private purpose. When the testator has trespassed beyond the permitted boundaries the courts cannot sustain the gift. " If the purpose to be attained is personal, private or selfish, it is not a charitable trust." (*Matter of MacDowell, supra.*)

An analysis of the terms of the will in the pending proceeding illuminates the intent of its maker. There is another element in

the case that clarifies the use of the language contained in his will. Mr. Carpenter died in Calcutta, India. From the verbiage employed by him, he was plainly a believer in the cults of theosophy and occultism which arose in that country and have spread throughout the world. The tenets of the cult have been practiced and taught in varying forms in India, in Tibet and other countries for many centuries. They were revived in a more practical form, so far as our western civilization was concerned, by the foundation of the Theosophical Society in New York city by Madame Blavatsky in 1875, and its continuance by her disciple, Annie Besant.

In the analysis of the will, it is first to be observed that the income must be paid by the trustee to " individuals." They are required to be " highly evolved." They must be possessed of " much occult knowledge," and their characteristics are further prescribed as persons who are " ceaselessly working for the advancement of the Race and the alleviation of the suffering of Humanity."

In my opinion the trust is wholly void and may not be saved in any manner by invoking our statutory jurisdiction under the doctrine of *cy pres*. The entire plan of the testator is destroyed by the mandatory requirement that the individuals to be benefited must be possessed of " much occult knowledge." The characterization of the individuals as " highly evolved " is not of itself prohibitory. The word " evolved " is defined to mean " developed." It might apply to any person who attained a highly developed mental training and experience in the arts and sciences, in the professions of teaching, of medicine or the law. On the other hand, the insuperable difficulty arises with the mandate that the beneficiaries must be occult. The word " occult " is defined by the Oxford Dictionary as " kept secret; hidden beyond the bounds of ordinary or natural knowledge; mysterious; transcendental, pertaining to those ancient and medieval sciences like alchemy, astrology, theosophy and the like." Webster's Internationa; Dictionary defines it as " belief in hidden or mysterious powers and the possibility of subjecting them to human control." The New Standard Dictionary defines the word as " concealed from observation or knowledge; * * * mysterious; * * * Hidden from material eyes; visible only by clairvoyance."

However sincere the believers of the cults of mysticism or theosophy or occultism in its higher sense may be, the great body of opinion among sound thinking men and women rejects belief in the existence of occult powers in individuals in a continuing form of manifestation. When viewed in the lower meaning of the term " occultism," the astrologer, the sorcerer, the charlatan, the mindreader, the crystal gazer or the worker of magic or legerdemain

may not, by any stretch of the imagination, be brought within the class of persons practicing benevolence or charity, as an inherent part of their occupation, within the meaning of our law applying to charitable gifts.

The trustee here is given wide discretion under the will to select persons with the characteristics defined as objects of the bounty. In the exercise of his own individual choice he might find such persons tested by his own belief in their occult powers. The test that the law imposes, however, is different. With the death or resignation of the individual trustee selected by the testator the duty of enforcing the trust will be imposed upon this court or the Supreme Court. A will must sufficiently define the purpose of the testator " so that the trust can be enforced by the courts, otherwise the will does not come within the provisions of the acts." (*Matter of Robinson*, 203 N. Y. 380, 385; *Matter of Cunningham*, 206 id. 601, 605.) The very mandate of the testator to select beneficiaries with highly etherial qualities makes impossible the selection of the beneficiaries by any court of conscience when guided by the general principles of modern science.

An interesting article on theosophy, written by a theosophist and explaining the teachings of the cult, may be found in the Americana Encyclopedia (Vol. 26, p. 517).

The phrase " highly evolved," as used by Mr. Carpenter, frequently occurs in the literature of theosophy. These superior persons are called " Adepts " or " Masters." The possibility of the existence of only a few of them is recognized. The training and process through the graduated steps towards that high state is exacting. They are supposed to possess divine powers in their fullness, and are substantially omniscient so far as the laws and conditions of our own solar system extend. They are advanced beyond human conditions. They have the power of sensing the subtler conditions of the universe and responding sympathetically to its vibrations. By the exercise of their highly evolved powers these adepts or masters can make definite experimental research in the field of the occult, just as the physicist in the physical world may do. Their powers are derived not only from research in meditation and consciousness, but also by phenomena derived while they are asleep. It is significant, also, that the clauses used in the will of Mr. Carpenter with respect to the " advancement of the Race and the alleviation of the suffering of Humanity " are paraphrased in the teachings of the cult, for, after the highly evolved master reaches Nirvana, the summit of his career, he is enabled to bring help, instruction and comfort to the inhabitants of the world, and he returns to earth to devote himself to the " service of humanity and the relief of suffering souls."

The mere recital of these etherial and superhuman qualifications is sufficient to demonstrate the utter impracticability of carrying into effect the trust involved here or attempting to sustain it as a benevolent or charitable use. The question here is not one of a trust to a group of indefinite persons, which might be saved by the Tilden Act. The persons to be chosen are described with too much definiteness; they may not be identified and are non-existent. Nor may the trust be saved by reason of the reference to the " advancement of the Race and the alleviation of the suffering of Humanity." The mere expression of a worthy purpose cannot correct the invalidity of a gift to an individual which is prohibited by our statutes. (*Matter of Beekman,* 232 N. Y. 365; *Butterworth* v. *Keeler,* 219 id. 446; *Matter of Frasch,* 245 id. 174; *Matter of Kennedy,* 240 App. Div. 20; affd., 264 N. Y. 691.) As stated by Judge UNTERMYER in *Matter of Kennedy (supra)*: " A bequest not otherwise charitable is not rendered so because it is to persons who follow an employment which is noble and appealing."

In *Matter of Beekman (supra)* the alleged charitable gift was to the Beekman Family Association, a corporation created for the purpose of educating members of the testator's family and to furnish aid to poor and needy members of the Beekman family as might be designated and approved by at least five directors of the corporation. There was also a direction to maintain and improve the cemetery lots of members of the Beekman family. The question presented was whether the transfer was taxable or exempt under the then existing text of the Tax Law. In its original decision the Court of Appeals sustained the taxability of the bequest because of the inclusion of the cemetery provision. Upon reargument (232 N. Y. 371), the majority of the court went further and found that those purposes which were sought to be created for the education of the members of the family or for aiding the poor relatives were not charitable in scope but were private and personal in a manner which permeated the whole plan. There the discretion conferred in the selection of the beneficiaries and the limitation of beneficiaries to relations of the testator were held to destroy the alleged charity. The present will, with the choice restricted to a very narrow class of mystics, is similarly void.

In *Matter of Kennedy* (240 App. Div. 20; affd., 264 N. Y. 691) the gift was to the Alumnae Association of the School of Nursing of the Presbyterian Hospital of the City of New York for the purpose of promoting a common fellowship among the graduate nurses and to secure a permanent home or club house for the members of the association. The purpose was held to be fraternal and social and not charitable and benevolent, even though the activities at times included relief of destitute members.

No new conceptions of public benefit may enlarge the language to include a use of the trust property for private profit or benefit. Where " the use is not charitable even in a broad sense, an intent or purpose on the part of the creator of the trust to confer an indirect benefit upon the public does not change the character of the trust," and " a gift to a person for his own benefit, whereby consequential charity may arise, is not a charitable use." (*Attorney-General* v. *Haberdashers Company*, 1 Myl. & K. 420, per BROUGHAM, Lord Chancellor, cited in *Matter of Frasch, supra.*) " Benevolent motive or a purpose to confer a general benefit does not bring a trust within the terms of the statute." (LEHMAN, J., *Matter of Frasch*, citing *Matter of MacDowell*, 217 N. Y. 454.)

Counsel for the next of kin argues correctly that the reference to the advancement of the race and the alleviation of the suffering of humanity was subordinate and was not used to state the purpose for which the income is to be applied, but to limit the qualifications of the beneficiaries. The gift to the special kind of individuals was dominant. It is also urged with equal force that the requirement of " ceaselessly working " might relate only to meditation or to introspective efforts without any outward public benefit of a charitable nature whatsoever. Suggestion is also made that the beneficiaries chosen might be mystics or persons interested in some oriental cult or even in mesmerism, hypnotism or astrology.

It is not necessary to decide whether the gift to a theosophical society would be valid as a charitable or religious gift. The gift here is to individual beneficiaries and not to a corporation. It should be pointed out, however, that the Supreme Judicial Court of Massachusetts has held that a legacy to such a corporation is not one for a charitable or religious use. It was indicated in that decision that theosophy is a school of philosophy and not a religious sect. (*New England Theosophical Corporation* v. *City of Boston*, 172 Mass. 60; 51 N. E. 456.) A similar conclusion was reached in *Korsstrom* v. *Barnes* (167 Fed. 216), where a gift to a theosophical society in India was held void.

The will here is clearly distinguishable in terms and effect from that construed in *Matter of Durbrow* (245 N. Y. 469), where the gift, although indefinite, for " The advancement of Christ's Kingdom on earth," clearly contemplated a religious purpose and one capable of practical and legal administration by donations to lawful religious purposes. Unlike the dispositions in the *Durbrow* case, the will of Mr. Carpenter presents an unsurmountable barrier of illegality because the initial gift is made to individuals of a class supernal and ephemeral in its makeup, and impossible of ascertainment or identification by any logical test.

*Matter of Judd* (242 App. Div. 389) is also fundamentally different. While in that case the donations were directed to be made to individuals out of the trust income, the dominant purpose of the testator was the encouragement and recognition of such persons in the field of cancer research, a worthy and lawful charitable object.

I find no evidence of any intent to create a benevolent or charitable use under this will. The gift is void in its entirety and intestacy must be decreed. The doctrine of *cy pres* cannot save it. The original gift is not to a lawful charity, the testator's purpose cannot be actually or validly accomplished, the beneficiaries are non-existent, and the court cannot save it by an attempt to find a purpose as " near as possible " to that of the testator which *cy pres* contemplates. (*Saltsman* v. *Greene,* 136 Misc. 497; affd., 231 App. Div. 781; affd., 256 N. Y. 636; *Wright* v. *Wright,* 225 id. 329; *Ely* v. *Megie,* 219 id. 112; *Matter of O'Hanlon,* DELEHANTY, S., 147 Misc. 546.)

Submit decree on notice construing the will accordingly.